## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:24-cr-00077-CG |
| | ) | |
| JESSICA MONTGOMERY | ) | |

## PLEA AGREEMENT

The defendant, **JESSICA MONTGOMERY,** represented by her counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.    The defendant understands her rights as follows:

     a.    To be represented by an attorney;

     b.    To plead not guilty;

     c.    To have a trial by an impartial jury;

     d.    To confront and cross-examine witnesses and to call witnesses and produce other evidence in her defense; and

     e.    To not be compelled to incriminate herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.    The defendant waives rights b through e, listed above, and pleads guilty to Count One of the Third Superseding Indictment, charging a violation of Title 18, United States Code, Sections 1958, Conspiracy to Commit Murder for Hire, and Count Five of the Third Superseding Indictment, charging a violation of Title 18, United States Code, Section 922(d), Transfer of Ammunition to a Prohibited Person.

1

Rev. 9/2021

3.      The defendant understands that the statements she makes under oath in the plea of guilty must be completely truthful and that she can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4.      The defendant expects the Court to rely upon her statements here and her response to any questions that she may be asked during the guilty plea hearing.

5.      The defendant is not under the influence of alcohol, drugs, or narcotics. She is certain that she is in full possession of her senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.      The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. She has discussed the facts of the case with her attorney, and her attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against her. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offense.

7.      The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and her counsel have discussed possible defenses to the charge. The defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice of his attorney.

8.      A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree

2

Rev. 9/2021

that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and her counsel are not part of this agreement and are not agreed to by the United States.

9.    This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because she is guilty.

10.    The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTY

11.    The maximum penalty the Court could impose as to Count One of the Third Superseding Indictment is:

a.    Up to 10 years' imprisonment;

b.    A fine not to exceed $250,000;

c.    A term of supervised release of 3 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

d.    A mandatory special assessment of $100.00; and

3

e.        Such restitution as may be ordered by the Court.

12.      The maximum penalty the Court could impose as to Count Five of the Third

Superseding Indictment is:

a.        Up to 15 years' imprisonment;

b.        A fine not to exceed $250,000;

c.        A term of supervised release of 3 years, which would follow any term of

imprisonment.  If the defendant violates the conditions of supervised

release, she could be imprisoned for the entire term of supervised release;

d.        A mandatory special assessment of $100.00; and

e.        Such restitution as may be ordered by the Court.

## SENTENCING

13.      The Court will impose the sentence in this case.  The United States Sentencing

Guidelines are advisory and do not bind the Court.  The defendant has reviewed

the application of the Guidelines with her attorney and understands that no one

can predict with certainty what the sentencing range will be in this case until after

a pre-sentence investigation has been completed and the Court has ruled on the

results of that investigation.  The defendant understands that at sentencing, the

Court may not necessarily sentence the defendant in accordance with the

Guidelines.  The defendant understands that she will not be allowed to withdraw

her guilty plea if the advisory guideline range is higher than expected, or if the

Court departs or varies from the advisory guideline range.

14.      The defendant understands that this Plea Agreement does not create any right to

be sentenced in accordance with the Sentencing Guidelines, or below or within

4

Rev. 9/2021

any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15.    The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16.    Both the defendant and the United States are free to allocute fully at the time of sentencing.

17.    The defendant agrees to tender $100.00 per count of conviction to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## **RESTITUTION**

18.    Pursuant to 18 U.S.C. §§ 3556 and 3663(A), restitution is mandatory. The defendant agrees to make full restitution in an amount to be determined by the Court at sentencing.

5

**FORFEITURE**

19.    The defendant agrees to forfeit to the United States any right, title, and interest in all assets subject to forfeiture under the notice of forfeiture contained in the charging document, including property specified in any bill of particulars and property previously seized by the government for administrative, civil, or criminal forfeiture. The defendant further consents to the filing of a motion for a preliminary order forfeiting such property and any dollar amount specified in the notice of forfeiture or bill of particulars, and the defendant confesses the requisite nexus between the property and the charge of the conviction. The defendant hereby withdraws any petition for remission or claim for such property for such property and further waives any right to contest or appeal the government's forfeiture proceedings for any reason, including on grounds that the forfeiture constitutes an unconstitutionally excessive fine or punishment, and in any manner, including by claim, petition, appeal or collateral attack.

**FINANCIAL OBLIGATIONS**

20.    The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

6

Rev. 9/2021

## UNITED STATES' OBLIGATIONS

21.    The United States will not bring any additional charges against the defendant related to the facts underlying the Third Superseding Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case.  This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

22.    The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

## APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35

23.    The defendant understands and agrees that she has no right to cooperate, and that the decision whether to allow her to cooperate is reserved solely to the United States in the exercise of its discretion.  If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

    a. The defendant shall fully, completely, and truthfully respond to all questions put to her by law enforcement authorities regarding the underlying facts of the offense(s) with which she is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which she has information or knowledge.

    b. The defendant acknowledges that she understands that she shall provide truthful and complete information regarding any offense about which she

Rev. 9/2021

has knowledge or information regardless of whether law enforcement authorities question her specifically about any such offense. This provision requires the defendant to divulge all information available to her even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c. The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which her cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance she shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d. If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

8

e.  The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in her possession or under her control and which are relevant to her participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense.  This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f.  The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g.  If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable.  The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if

9

any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should she provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h. The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by her from her illegal activities or obtained by others associated with her or of which she has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

10

Rev. 9/2021

(2) permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during her breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i. Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during her cooperation. The defendant acknowledges and agrees that the information that she discloses to the United States pursuant to this agreement may be used against her in any such prosecution.

j. The United States and the defendant agree that the defendant will continue her cooperation even after she is sentenced in the instant matter. Her failure to continue her cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the

11

United States will be free to reinstate the charges and the prosecution of the charges in the Indictment, which are to be dismissed in accordance with this agreement.  Under these circumstances, the defendant expressly waives any rights she may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

24.    As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge her guilty plea, conviction, or sentence in any district court or appellate court proceedings.

        a.    **EXCEPTIONS.**  The defendant reserves the right to timely file a direct appeal challenging:

    (1)    any sentence imposed in excess of the statutory maximum;

    (2)    any sentence which constitutes an upward departure or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

25.    If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

Rev. 9/2021

26.    The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

27.    If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

28.    The defendant understands that if she breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant.  In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge.  In such event, the defendant agrees not to assert any objections to prosecution that she might have under the Sixth Amendment and/or Speedy Trial Act.

29.    In addition, if the defendant is released from detention prior to sentencing, she understands that the United States will no longer be bound by this agreement if she violates any condition of her release prior to sentencing or prior to serving her sentence after it is imposed.

## ENTIRETY OF AGREEMENT

30.    This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Rev. 9/2021

Respectfully submitted,
SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: December 17, 2024          /s/ Jessica S. Terrill
                                 Jessica S. Terrill
                                 Tandice Blackwood
                                 Assistant United States Attorney

Date: December 16, 2024          /s/ Kacey Chappelear
                                 Kacey Chappelear
                                 Assistant United States Attorney
                                 Deputy Chief, Criminal Division

        I have consulted with my counsel and fully understand all my rights with respect to the

offenses charged in the Third Superseding Indictment pending against me.  I have read this Plea

Agreement and carefully reviewed every part of it with my attorney.  I understand this

agreement, and I voluntarily agree to it.  I hereby stipulate that the Factual Resume, incorporated

herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United

States could have proved the same beyond a reasonable doubt.

Date: 1/4/25                     Jessica Montgomery
                                 Defendant

        I am the attorney for the defendant. I have fully explained her rights to her with respect

to the offense(s) charged in the Third Superseding Indictment in this matter.  I have carefully

reviewed every part of this Plea Agreement with her.  To my knowledge, her decision to enter

14

Rev. 9/2021

into this agreement is an informed and voluntary one.  I have carefully reviewed the Factual

Resume, incorporated herein, with the defendant and to my knowledge, her decision to stipulate

to the facts is an informed, intelligent and voluntary one.

Date: ___1/4/25___                           _____
                                                     William C. Alford
                                                     Attorney for Defendant

15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 1:24-cr-00077-CG |
| | ) |
| JESSICA MONTGOMERY | ) |

## FACTUAL RESUME

The defendant, **JESSICA MONTGOMERY**, admits the allegations of Counts One and Count Five in the Third Superseding Indictment.

## ELEMENTS OF THE OFFENSE

**JESSICA MONTGOMERY** understands that in order to prove a violation of Title 18, United States Code, Section 1958(a), as charged in Count One of the Third Superseding Indictment, the United States must prove:

First:    two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit murder for hire, as charged in the Superseding Indictment, the elements of which are as follows:

  a)    the defendant used, or caused another to use, the mail or any facility of interstate or foreign commerce;

  b)    the use was with the intent that a murder be committed in violation of the laws of any State or the United States; and

  c)    the murder was consideration for the receipt of, or a promise or agreement to pay, anything of pecuniary value;

Second:    the defendant knew the unlawful purpose of the plan and willfully joined in it.

1

Rev. 9/2021

**JESSICA MONTGOMERY** understands that in order to prove a violation of Title 18, United States Code, Section 922(d), as charged in Count Five of the Third Superseding Indictment, the United States must prove:

| | |
|---|---|
| First: | The defendant sold/transferred the firearm/ammunition described in the indictment at or about the time alleged; |
| Second: | the firearm's/ammunition's buyer/receiver had been convicted of a felony—a crime punishable by imprisonment for more than a year; and |
| Third: | the defendant knew or had reasonable cause to believe that the buyer/receiver had been convicted of a felony. |

## OFFENSE CONDUCT

Defendant, **JESSICA MONTGOMERY**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **MONTGOMERY'S** plea of guilty. The statement of facts does not contain each and every fact known to **MONTGOMERY** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

On May 3, 2024, the FBI became aware of a Murder for Hire plot involving Rebecca MURPHY. MURPHY was hired by Sandra GRIMES, Mitzy SMITH, and Judy OWEN to murder victim R.M. During the course of the investigation, it was determined there was a credible threat to R.M. and that furtive steps had been taken to carry out the murder. These steps included providing a firearm to MURPHY, MURPHY and/or GRIMES, SMITH, and OWEN traveled from Alabama to Louisiana for the purpose of surveilling R.M.'s residence on at least three (3) occasions, and communications from the co-conspirators to MURPHY on how, where, and when to commit the murder.

2

On or around May 10, 2024, the FBI executed the arrests of GRIMES, SMITH, and OWEN for conspiracy to commit murder. On or around May 24, 2024, the FBI executed the arrest of MURPHY for conspiracy to commit murder and possession of a firearm by a prohibited person.

MONTGOMERY was in an intimate relationship and lived with MURPHY during the previous mentioned timeframe—specifically, the spring of 2024. MONTGOMERY was a knowing participant in the conspiracy to kill R.M. by receiving money for the "hit" through transactions to MONTGOMERY'S CashApp account, traveling across state lines for the purpose of killing R.M., and by purchasing ammunition and providing said ammunition to the hired hitperson, MURPHY.

In late February 2024, OWEN provided MURPHY $300.00 for the specific purpose of purchasing heroin or fentanyl prior to OWEN and MURPHY traveling to Marrero, Louisiana in an attempt to murder R.M. During an interview on October 31, 2024, MONTGOMERY admitted that she was present when OWEN picked up MURPHY at their home. MONTGOMERY also admitted that she knew that OWEN provided the money to MURPHY explicitly for the purpose of injecting R.M. with a fatal amount of a controlled substance that would cause an overdose and kill R.M.

In early March of 2024, MONTGOMERY and MURPHY travelled to Marrero, Louisiana and then to Gretna, Louisiana. The purpose of this trip was to surveil and ultimately kill R.M. Prior to this trip, evidence shows that SMITH provided MURPHY with a .22 caliber handgun to take on this trip. MURPHY is a convicted felon and therefore prohibited to be in the possession of firearms or ammunition. MONTGOMERY, who is also a convicted felon and prohibited from possessing or purchasing firearms and ammunition, admitted that on March 8, 2024, MONTGOMERY purchased .22 caliber ammunition from a pawn shop in Gretna, Louisiana.

3

**MONTGOMERY** provided this ammunition to MUPRHY because MURPHY was concerned that SMITH only provided 3 or 4 rounds for the handgun.

During the October 31, 2024, interview, **MONTGOMERY** revealed that just prior to the early March 2024 trip to Marrero, Louisiana, SMITH told **MONTGOMERY** and MURPHY that SMITH was holding $2500.00 in cash for them to successfully kill R.M. and to bring back proof of the killing.

It has been shown through search warrants that GRIMES used CashApp, username $SKGrime67, to provide payments to **MONTGOMERY**. The payments, which consisted of various amounts started in February 2024 and continued until March 2024. **MONTGOMERY** admitted the payments were for MURPHY to kill R.M.

Court records indicate MURPHY had previously been convicted of multiple crimes punishable by imprisonment for a term exceeding one year, to-wit: Fraudulent Use of a Credit Card, on or about March 3, 2015, in the Circuit Court of Baldwin County, Alabama, case number 05-CC-2014-000934; Burglary 3rd, on or about March 3, 2015, in the Circuit Court of Baldwin County, Alabama, case number 05CC-2014-000979; and Possession of a Firearm by a Convicted Felon, on or about August 23, 2016, in the United States District Court for the Southern District of Alabama, case number 1:15-cr-00295-TFM.

**MONTGOMERY** knew of MURPHY'S status as a convicted felon at the time she transferred the ammunition to MURPHY.

As part of her guilty plea in this case, **MONTGOMERY** admits that (1) two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit murder for hire, as charged in the Third Superseding Indictment; and (2) she knew the unlawful purpose of the plan and willfully joined in it. In particular, **MONTGOMERY** admits that she and

4

others (a) used and caused others to use facilities of interstate commerce, including but not limited to cell phones, social media accounts, and vehicles; (b) that such use was with the intent that a murder be committed in violation of the laws of the State of Alabama and the State of Louisiana and other states; and (c) that the murder was consideration for the receipt of, or a promise or agreement to pay, anything of pecuniary value.

As a part of her guilty plea in this case, **MONTGOMERY** admits that she (1) transferred ammunition as described in the indictment; (2) that the receiver, MURPHY, had been convicted of a felony; and (3) that **MONTGOMERY** knew or had reasonable cause to believe that MURPHY had been convicted of a felony.


AGREED TO AND SIGNED.


Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY


Date: December 17, 2024          */s/ Jessica S. Terrill*
                                Jessica S. Terrill
                                Tandice Blackwood
                                Assistant United States Attorney



Date:   December 16, 2024          */s/   Kacey Chappelear*
                                Kacey Chappelear
                                Assistant United States Attorney
                                Deputy Chief, Criminal Division

5

Rev. 9/2021

Date: 1/4/25

_____
Jessica Montgomery
Defendant


Date: 1/4/25

_____
William C. Alford, Esq.
Attorney for Defendant

6

Rev. 9/2021